## ST. LOUIS & S. F. RY. CO. v. BRADLEY.

(Circuit Court of Appeals, Fifth Circuit. January 23, 1893.)

No. 79.

1. EXPERT WITNESS—COMPETENCY—DISCRETION OF COURT.

The qualification of a witness who is not a scientific expert, but who has had special opportunities for observation in the particular case, to give his opinion as to the effect of a railway bridge and embankment in causing overflows of a river is a matter within the discretion of the trial judge, and his ruling thereon will not be disturbed unless plainly erroneous.

2. SAME—COMPETENCY.

There is no error in holding such a witness qualified as a practical expert as to the effect of the bridge and embankment in causing overflows upon his farm, when he has long resided there, and has experienced and observed several overflows before and after their erection.

Error to the Circuit Court of the United States for the Eastern District of Texas.

Action by William H. Bradley against the St. Louis & San Francisco Railway Company for damages caused by the erection and maintenance of a bridge and embankment. Verdict and judgment for plaintiff. Defendant brings error. Affirmed.

Statement by LOCKE, District Judge:

The suit in the court below was brought to recover damages for injury to the farm of the plaintiff, caused by an overflow of the Red river, which was alleged to have been diverted from its natural and original course by a bridge and embankment constructed by defendant company. The testimony of plaintiff below, defendant in error here, which sets out fully the history of the case and the questions for review, is as follows:

"I am the owner of the land described in plaintiff's petition, and was at the date of the institution of this suit. My farm is on the Texas or south bank of Red river, in Lamar county, Texas, and about one and one fourth miles down the river from defendant's bridge across the river at Arthur; that is, my farm lies east of and down the river from defendant's railroad embankment. I have lived on the farm since March, 1876. There has been five overflows of Red river since I have lived on the land, to wit, in 1876, 1885, 1888, 1890, and 1892. There was very little difference in the height of the water at each overflow. In the latter part of 1887 the defendant built a bridge across Red river at Arthur, about a mile and a quarter above my farm. The bridge, as originally built, was something over 600 feet long. The defendant at the same time threw up and constructed an embankment from the north end of its bridge extending across the bottom to the foothills, about one and one fourth miles. The embankment was from five to fifteen feet high. Only three water ways were left in this embankment. The embankment was highest over near the center and towards the hills. There was not half as

much water ways as embankment. I do not remember the actual measurement of the water ways and embankment. I helped to carry the chain to take the measurements. Mr. J. H. Wright set the measurements down, and has them now. I did not keep them myself. The bottom on the north side of the river to the foothills is a low, flat bottom. When Red river overflowed its banks, the water first left its banks about one and one fourth miles above where defendant built its bridge, on the north side of the river. Before the embankment was built the overflowed water would scatter all over this bottom from the main channel of the river to the foothills on the north, and would continue to flow in one wide expanse of the bottom until Horse creek, below my place, was reached, where the flood waters were again confined to the banks of the river. My farm overflowed before the embankment was built, but not from headwater. The water would back up Fishing creek to a ditch I had to drain my farm, and then come up the ditch and spread over my farm. The effect of this character of overflow was to enrich the land. The backwater, when it receded, left deposits of rich alluvial soil on the land, which greatly enriched it. In the overflow of 1888, after the defendant had built its embankment, the water from Red river broke over its banks about 300 yards from my farm, and run over my farm in a small place that you could jump across. This is the first time since I had owned the farm that the headwaters passed over any part of my farm. About the time this water came down on my farm the defendant's embankment gave way on the north side of the river, and washed out in some places, and immediately the water receded from my farm. There was some 900 feet of the embankment washed away, including some 200 feet of that immediately north of the north end of the bridge. After the overflow of 1888 went down, defendant repaired and rebuilt its embankment, and put in another span of the bridge at the north end, of 200 feet, where the embankment had washed away, and putting in open trestleway the entire washout, building the remaining embankment two feet higher, setting Bermuda grass on top, and riprapped the ends of the embankment with rock, by piling in carload after carload of rock, and at the south end of the embankment put in 60 feet of solid rock. In May, 1890, Red river again overflowed, but defendant's embankment did not give way. The water was from 18 inches to 2 feet higher on the upper or west side of the embankment than it was on the east or lower side, as was apparent from the water marks on the trees. We did not measure them. The current of the river and the great volume of the water seemed to be concentrated at the north span of the bridge,—the span that had been put in after the overflow of 1888. There is a bend in the river just below the bridge. The current and great volume of water struck the Texas bank of the river just above my farm, and about 200 yards below the bridge broke the bank, and run through my farm. Piles of drift and a sand bar from 1 to 3 feet high covered about 285 acres of my farm. (The map is here shown witness, and he states the map properly shows Red river and plaintiff's farm where the river went through the same; also defendant's bridge, water ways, and embankment, with the length of each.) The map was made by Mr. Jno. C. Oates, a surveyor, who is now dead. The measurements as shown thereon are correct. I carried the chain in taking the same."

On cross-examination he testified: "I am a farmer, and have been one all my life. I am no engineer. Red river is a stream that is frequently changing its course." Before cross-examination the witness was asked the following question by plaintiff's counsel: "Question. Based upon the facts stated by you as to how defendant's embankment was constructed where the water in time of overflow left the banks and flowed before the embankment was built, and where it flowed after the embankment was built, what, in your opinion, was the effect of defendant's embankment during the overflow of 1890 on the flow or passage of water in its usual course?" To which question defendant objected, on the ground that plaintiff, the witness, was not an expert, and his opinion, as called for, was inadmissible, and he was not qualified to answer the question; which objection was overruled by the court, and the witness answered as follows: "The effect of defendant's embankment was to dam up the water which overflowed the bottom on the north side of Red river, the water ways being insufficient for the passage of water

down the bottom on the north side of the river, and, to divert it from its course as it usually flowed before the embankment was built; and to concentrate and increase the water in the river near the north end of the bridge, and cause it to break over its bank on the Texas side, about 200 yards below the bridge, and be discharged and flow over my farm." To which ruling of the court defendant, by counsel, excepted, and assigned as error that the court erred in admitting the opinion of plaintiff, testifying in the cause, that the effect of defendant's embankment during the overflow of 1890 on the flow or passage of water in its usual course down Red river was to change the course of the water as it usually flowed before the embankment was built, and to concentrate and increase the water in the river near the north end of the bridge, and to cause it to break over its bank on the Texas side, about 2,000 yards below the bridge, and be discharged and flow over his farm.

J. L. Harris and W. H. Clark, (W. M. Alexander and E. D. Kenna, on the brief,) for plaintiff in error.

E. B. Kruttschnitt and James G. Dudley, (W. S. Moore, on the brief,) for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

LOCKE, District Judge, (after stating the facts.) The only question to be considered in this case is whether the answer to the question objected to should have been admitted in evidence. In the view we take of the case, it will be unnecessary to determine whether the exception taken to the ruling upon the objection to such admission was taken at the time and on trial, or whether the assignment of error was technically correct or not. The inquiry in this court must be limited to matters presented to and considered by the court below, and in this case must, therefore, be confined to the objection made at the time, namely, that "the witness was not an expert, and his opinion, as called for, was inadmissible, and he was not qualified to answer the question." The ground of the objection was that the witness was not an expert, and was not qualified to express an opinion. The contention that no one not shown to be an expert by scientific research is qualified to express an opinion in evidence cannot be accepted to the extent it is urged. In Insurance Co. v. Lathrop, 111 U. S. 612, 4 Sup. Ct. Rep. 533, the supreme court, speaking by Justice Harlan, says:

"There are matters of which all men have more or less knowledge, according to their mental capacity and habits of observation,—matters about which they may and do form opinions sufficiently satisfactory to constitute the basis of action. While the mere opinion of a nonprofessional witness, predicated upon facts detailed by others, is incompetent upon an issue of insanity, his judgment, based upon personal knowledge of the circumstances involved in such an inquiry, certainly is of value."

The question in that case was one of insanity, and the opinion of nonexperts, who testified from facts within their own knowledge, was held admissible. In Railway Co. v. Warren, 137 U. S. 348, 11 Sup. Ct. Rep. 96, the question was the same, but the testimony introduced was in a determination of values, and the same conclusion was reached. It is true the subjects in those cases were different, but the arguments and reasons for the admission of the testimony apply with equal force to this case. In Porter v. Manufacturing Co.,

17 Conn. 249, the opinion of a nonexpert was admitted upon the ground that the witness had enjoyed special opportunities for acquiring a knowledge of the facts upon which his opinion was based, and we consider the principle there declared well established; that such a witness—one who has had special opportunities for acquiring a knowledge of facts necessary to reach a correct conclusion upon a question of fact—may, after stating such facts, and satisfying the trial court of his qualification in that respect, express his opinion so based; such opinion to be weighed and considered by the jury. Railway Co. v. Warren, 137 U. S. 348, 11 Sup. Ct. Rep. 96; Insurance Co. v. Lathrop, 111 U. S. 612, 4 Sup. Ct. Rep. 533; Railway Co. v. Locker, 78 Tex. 280, 14 S. W. Rep. 611; Spring Co. v. Edgar, 99 U. S. 645; Railway Co. v. Klaus, 64 Tex. 293.

Whether such witness has shown himself sufficiently well informed by special observation and knowledge to be permitted to express his opinion is a question for the trial court, which will not be reversed unless unquestionably error. Manufacturing Co. v. Phelps, 130 U. S. 520, 9 Sup. Ct. Rep. 601; Spring Co. v. Edgar, 99 U. S. 645; Railway Co. v. Warren, 137 U. S. 348, 11 Sup. Ct. Rep. 96. In this case the witness had testified of his long residence upon his farm in the immediate vicinity of the bridge and embankment complained of, his observation and experience in five overflows at that place, of the manner and effect of the different overflows before the building of the bridge, at the time the bridge was carried away, and when it was subsequently re-established; and we see no error in the court in finding him qualified to express an opinion in the case. The exception to the ruling cannot be sustained, and we find no error in the record.

The judgment will therefore be affirmed.

### On Rehearing.

#### (February 20, 1893.)

PARDEE, Circuit Judge. In this case an application for a rehearing has been made on the ground that we erred in sustaining the ruling of the trial court as to the admission of expert evidence. On the trial a question to the jury was as to the effect of defendant's embankment during the overflow of 1890 on the flow or passage of water in its usual course. It could only be proved from personal observation or experience. Those who had observed the flow of the river before and after the embankment were, in the nature of things, the best witnesses. The witness whose evidence was admitted on this subject over the defendant's objections testified from both observation and experience. He was an expert for the case; not a scientific one, but a practical one. His opportunities for observation and the character and sufficiency of his experience were fully shown. It was for the jury to determine the weight to which his opinion was entitled. As a matter of law, the qualification of a witness to testify as to cause and effect in a given case is a question for the trial judge, and his ruling will not be disturbed unless clearly erroneous. "Whether a witness called to testify to any matter of opinion has such qualifications and knowledge as to make his testimony admissible is a preliminary question for the judge presiding at the trial, and

his decision of it is conclusive, unless clearly shown to be erroneous in a matter of law." Manufacturing Co. v. Phelps, 130 U. S. 520, 9 Sup. Ct. Rep. 601, citing Perkins v. Stickney, 132 Mass. 217; Sorg v. German Congregation, 63 Pa. St. 156. The Massachusetts case holds that the decision of the trial judge is conclusive, unless it appears upon the evidence to have been erroneous, or to have been founded upon some error in law; citing Nunes v. Perry, 113 Mass. 274, and Com. v. Sturtivant, 117 Mass. 122. In Sorg v. German Congregation, supra, it is said:

"This preliminary question of fact as to whether a witness is an expert qualified to pronounce an opinion, as we have held in Oil Co. v. Gilson, (decided in this term,) must, in a great measure, be confided in the discretion of the court below trying the cause, and we will not reverse either on account of admission or rejection of such evidence unless in a clear and strong case."

In Oil Co. v. Gilson, 63 Pa. St. 146, referred to, it is said: ·

"An expert, as the word imports, is one having had experience. No clearly defined rule is to be found in the books as to what constitutes an expert. Much depends upon the nature of the question in regard to which an opinion is asked. There are some matters of which every man with ordinary opportunities of observation is able to form a reliable opinion. Wilkinson v. Moseley, 30 Ala. 562; De Witt v. Barly, 17 N. Y. 340. It is not necessary, as it is said in one case, to call a drover or butcher to prove the value of a cow, (Railroad Co. v. Irvin, 27 Ill. 178;) nor is it imperatively required that the business or profession of the witness should be that which would enable him to form an opinion, (Van Deusen v. Young, 29 Barb. 9; Smith v. Hill, 22 Barb. 656; Price v. Powell, 3 N. Y. 322; Fowler v. Middlesex, 6 Allen, 92.) * * * While undoubtedly it must appear that the witness has enjoyed some means of special knowledge or experience, no rule can be laid down in the nature of things as to the extent of it. It must be for the jury to judge of the weight to which his opinion is entitled."

Our decision in this case seems not only to be based upon reason and the common sense of the case, but upon approved authority.

A rehearing is refused.