Mr. Chief Justice Alvey
delivered the opinion ■ of the Court:
The plaintiff, the- widow of Martin V. Casey, deceased, instituted this action against the defendant, a corporation *515 incorporated under the laws of the State of Ohio, as a mutual benefit association, to recover the amount of an insurance policy or benefit certificate, on the life of the deceased, Martin V. Casey. The policy or benefit certificate declared on was issued on the 29th of March, 1886, to Martin V. Casey, who then became a member of the association, for the sum of $5,000, payable to his wife Eva A. Casey, the plaintiff in this action. All dues and assessments payable to the association on the policy have been duly paid. The policy or certificate was issued under the seal of the corporation, and is declared on as a sealed instrument.
The defendant pleaded to the declaration several pleas. First, that it was not indebted as alleged; Second, that it did not promise as alleged. These two pleas were technically inappropriate to the action on a sealed instrument, but the plaintiff joined issue on them, and thereby agreed to try the case on the issues thus made. The third, fourth and fifth pleas allege, with variation of statement, the fact that the insured wilfully and intentionally committed suicide; and that, by a provision of the policy, such suicide avoided the policy on the life of the deceased. Issue was joined on these pleas also.
Among the by-laws controlling the benefit fund of the association, and subject to which by-laws the certificate or policy sued on was issued, is the following provision:
“That no benefit whatever shall be paid upon the death, of a member who commits suicide within two years after becoming a beneficial member, whether the member at the time of committing suicide be either sane or insane.”
There have been two jury trials of the case, on the issues made by the pleadings, both of which resulted in favor of the plaintiff for the amount of the policy.
At the last trial several questions were raised as to the admissibility of evidence, and as to the giving and refusing of instructions to the jury by the court. There was also a motion for a new trial, upon the ground that the evidence was not sufficient in law to support the verdict. The mo *516 tion was overruled, and an appeal was taken to the General Term of the Supreme Court of the District, from whence the case was transferred to this court under the statute.
The constitution and by-laws and rules and regulations of the association, as also the fact of membership of the deceased at the time of his death, and the issuance to him of the policy or benefit certificate sued on, and the application for membership, upon which such benefit certificate was issued, were all admitted in evidence under stipulation by counsel, and about which there is no dispute. Proof was also given by the plaintiff of the death of the insured, and that he was at the time of death a member of the association in good standing. Proof was also given that all dues and assessments on the policy had been fully paid; and that proof of death had been duly furnished the association.
This proof presented a prima facie case to entitle the plaintiff to recover. If no other proof had been introduced into the case, the plaintiff would have been entitled to a verdict, and the court would have so instructed the jury. Hence the prayer of the defendant, at the conclusion of the plaintiff’s proof in chief, that the jury be instructed to render a verdict for the defendant, was properly refused.
The matter of defense was solely dependent upon the question, whether the insured came to his death by wilful or intentional suicide, effected by taking, arsenical poison; and the onus of proof to support the affirmative of that question, was entirely upon the defendant.
To support this defense, a large mass of testimony, elicited by elaborate and protracted examination and cross-examination of witnesses was introduced, principally from physicians, including the attending physician of the deceased. The testimony of these witnesses consisted almost entirely of the ante-mortem and post-mortem indications of the insured, a mixture of opinion and fact, and all dependent for its value as proof upon the professional skill and ability of the witnesses. In connection with this professional evidence, there was a certain statement or supposed admission *517 of the insured, made to the physician a few hours before his death, but subsequently denied to his wife, to the effect that he had taken “rough on rats,” a composition containing arsenic. But this admission, as proved was the statement of a man in a moribund condition, made in reply to the probing inquiries of the physician, and there was no explanation of the circumstances under which the composition was taken; and there was no external evidence to show that such poison was or had been within the reach of the deceased. This falls short of proving an intentional suicide. Taking such statement or admission as reliable, as to the fact of his having taken the poison, it was only the ground of an inference that it had been taken with a suicidal intent. All this was matter for the jury, from which to draw proper inferences of fact.
The defendant also introduced the official notice and proof of death, furnished from the local agency or office in Washington city to the home office of the association, with the proof of death furnished to the local board. In the certificate of the attending physician, it is stated that the insured died October 30, 1886, at 8 o’clock P. M. “ Cause of death, melancholia, consequent on supposed heart disease; overdose of arsenic (rough on rats); gastro-enteritis. Duration of last sickness,* 19 hours.”
Then, the plaintiff, in rebuttal, introduced expert testimony as to the various and proper tests by which to ascertain the presence of arsenic in a dead body, for the purpose of showing the existence of doubt in the testimony offered by the defendant, as to the real cause of death. This was followed by testimony on behalf of the plaintiff, including that given by the plaintiff herself, to show that the deceased had been severely afflicted with heart disease, and that he had been so afflicted from a time prior to the time he made his application and became a member of the defendant association. The purpose of this testimony was to show that it was probable the deceased died of heart disease, or from the effects of some supposed remedy for or relief to such disease, taken *518 without any suicidal intention, and not of arsenical poison purposely taken, as sought to be shown by the defendant.
The defendant, in reply to this evidence offered by the plaintiff, proposed to read in evidence the written application made by the insured to become a member of the defendant association, wherein he stated that he had no injury or disease which would tend to shorten his life, and that he was in good health and able to gain a livelihood. To this offer the plaintiff objected; and the defendant then applied for leave to amend its pleading, and offered the application in connection with such motion for leave to amend. But the motion for leave to amend was denied, and the defendant excepted. The defendant then proposed to read the said application for the purpose of contradicting the statements made by the plaintiff, as to the condition of the deceased at the time of^ obtaining the policy down to the time of his death. This offer was likewise objected to and ruled out, and the defendant excepted.
The motion made for leave to amend pleadings, or to file a new plea, in order to let in certain proof proposed by the defendant, was exclusively within the discretion of the trial judge. The motion was made after all the proof on the part of the plaintiff, both in chief and in rebuttal, had been introduced, and if a new plea had been filed it would' have necessitated a re-trial of the case, at least on that issue. The ruling of the court, however, was not the subject of an exception. Gormley v. Bunyan, 138 U. S., 623, 630.
But the next exception we think well taken. The plaintiff deemed it important to her case, and to overcome the evidence on the part of the defendant given to establish the fact of suicide of the deceased, to give evidence in rebuttal, that the deceased had died of heart disease, or something taken to relieve suffering of heart disease, and that he had been suffering with such disease from a time anterior to his application for membership in the defendant association. In his application he represented himself as being of good health, and without any disease that would likely shorten *519 life. The plaintiff obtained the verdict, and how much weight was allowed to her testimony it is difficult to conjecture — it may have been considerable. If the truth was told in the application, it goes a good way to refute the statement of the plaintiff in her testimony. Her claim is founded upon the assumed truth of the representations in that application, and there can be no good reason why. she should not bear the consequences of the conflict of statement. It is certainly right that the defendant should be allowed to break the force of the plaintiff’s testimony by showing that it is in conflict with the representation upon which her claim is based.
Upon the whole evidence, the plaintiff offered seven prayers for instruction to the jury, and they were all granted. The defendant excepted, but we find no just ground for exception in any of these instructions granted. We shall not recite them here; they can be set out in the report of the case, but we think they fairly and correctly embody the propositions to which the facts of the case give rise, and fully instruct the jury as to the scope of their inquiry.
The defendant offered several propositions for instruction; but only the second, as amended by the court, was granted. That prayer as granted instructed the jury that if they should be satisfied from the evidence that Martin V. Casey committed suicide' — that is, purposely caused his own death — the verdict must be for the defendant. This gave the defendant the full benefit of the defense made by it, in the discussion of the facts before the jury, and in consideration of the evidence by that tribunal. All the other prayers offered by the defendant were rejected.
By the first of these prayers, the court was requested' to instruct the jury that, upon the whole evidence in the case, the defendant was entitled to the verdict. This was simply asking the court to usurp the function of the jury, and to dispose of the case upon its- own view of and conclusion from the facts. This could not have been done upon any just principle of a common law trial by jury.
*520 As we have seen, the plaintiff had made a prima facie case to entitle her to recover; and the evidence offered to overcome that prima facie case was of a nature to be susceptible of much argument and scientific scrutiny. This defensive evidence was of a nature to be urged with more or less effect with the jury, as they should believe in the skill and accuracy of judgment of the physicians who had testified; and the jury could not be deprived of their right thus to weigh and scrutinize the testimony. Testimony of the nature and character of that given in this case, is especially required to be passed upon by the jury. Spring Co. v. Edgar, 99 U. S., 657, 658. The weight of evidence is for the jury, and not for the judge. As said by the Supreme Court of the United States, in Ins. Co. v. Doster, 106 U. S., 30, 32, and again in Ins. Co. v. Lathrop, 111 U. S., 615, “where a cause fairly depends upon the effect or weight of testimony, it is one for the consideration and determination of the jury, under proper directions as to the principles of law involved. It should never be withdrawn from them unless the testimony be of such a conclusive character as to compel the court, in the exercise of a sound legal discretion, to set aside a verdict returned in opposition to it.”
The case falls directly within the principle so clearly stated by Mr. Justice Story, in delivering the opinion of the Supreme Court, in the case of Crane v. Morris, 6 Pet., 598, 621, where he said that the court cannot be called upon to decide on the nature and effect of the whole evidence; part of which is of a presumptive nature, and capable of being urged with more or less effect to the jury; and that whatever influence or weight it may derive from its peculiar nature or character, the jury have the right to consider it, without being controlled by the court. And in regard to the order in which they shall consider the evidence in a cause, and the manner in which they shall weigh it, the law has submitted it to them to decide for themselves; and any interference with this right would be an invasion of their privilege to respond to matters of fact. In this case there was evidence for the consideration *521 of the jury; and we are clear in the opinion that the court below was entirely correct in rejecting the first prayer of the defendant.
The third, fourth, and sixth prayers of the defendant were also properly rejected by the court. They were too general and indefinite to be safe guides to the jury. But we think the fifth prayer of the- defendant ought to have been granted. It is very general, it is true; but when read in connection with other instructions granted, there could be no danger of its misleading the jury.
The general charge of the learned justice below was strictly within the scope and principles of the instructions granted at the instance of the plaintiff; and from what we have said in regard to those instructions, it follows that we find no error in the charge of the court.
We have said all that it is necessary to say to dispose of this appeal. It follows that the judgment must be reversed and a new trial awarded.

Judgment reversed and new trial awarded.