# REPORTS OF CASES

## ADJUDGED IN

# THE COURT OF APPEALS

### OF THE

## DISTRICT OF COLUMBIA.

## JACKSON *v.* UNITED STATES.

CRIMINAL LAW; LARCENY; EVIDENCE.

Where, on the trial of a former employee of the government for the larceny from the United States of two kegs and several cans of paint, which had been taken from Fort Washington, it appears that one of the kegs produced in court is so lettered as to indicate government ownership, and bears the number 402, and an officer of the Quartermaster's Department, stationed at the Fort, testifies to having received from an army depot in New York an invoice, bearing that number, of two kegs and several cans of paint, and he identifies the lettered keg produced by the fact that the number on it corresponds with the number on the invoice, the keg is admissible in evidence over the objection of the accused that the number and letter are hearsay, and not evidence of ownership by the United States, and the testimony of the officer that the lettered keg belongs to the United States is competent, especially as it appears that he is specially qualified to testify as to the significance of the marking.

No. 2025. Submitted October 12, 1909. Decided November 2, 1909.
Vol. XXXIV.—1.

HEARING on an appeal by one of two defendants indicted and tried for the crime of larceny in the Supreme Court of the District of Columbia from judgment of conviction entered upon a verdict of guilty.        *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal by John Jackson from a conviction in the supreme court of the District under, an indictment charging him and one Warren Rolls with larceny from the United States. The trial resulted in the conviction of each defendant, but Rolls prosecuted no appeal.

Edward Hayden, the captain of an oyster boat, testified on behalf of the government that, on the 13th of November, 1908, while his boat was docked at the Eleventh street wharf in the District of Columbia, the defendant Rolls, whom he had known for some time, solicited him to buy some paint; that later Rolls and the defendant Jackson came aboard bringing one keg of white lead paint, one keg of red lead paint, and some cans of paint, the same being wrapped in burlap sacks, and the witness paid $5 for the lot; that subsequently Officer Osterman took possession of said property. The witness identified the sacks exhibited as the ones in which the paint was wrapped when he purchased it. Whereupon these sacks were offered in evidence. One of the sacks bore no lettering; the other bore in black letters the following: "U. S. Army, Depot of N. Y." The testimony of this witness was corroborated by the testimony of two other witnesses.

Lieutenant Philip Matthews, of the Quartermaster's Department, U. S. Army, stationed at Fort Washington, testified that, on the 11th day of February, 1908, he received an invoice numbered 402, from Major Kimball, U. S. Army, N. Y. Depot, of one keg of red lead paint, one keg of white lead paint, and several cans of paint; "that, after the delivery of the lead and paint invoiced as above stated, he saw the lead and paint so invoiced in the warehouse at Fort Washington," and that subsequently they were missing from said warehouse. The witness

further testified that the defendants were employed on the government tug Cushing, used for traffic between the District of Columbia and Fort Washington. Thereupon there was exhibited to the witness the kegs of lead and the cans of paint sold by defendants to said Hayden, and witness was asked whether he was able to identify these kegs and cans as the same which he saw in the warehouse at Fort Washington. Over the objection and exception of the defendants, the witness answered that he could not identify the cans of paint or the unlettered keg of lead, but could identify the lettered keg of lead. The government then offered the kegs and cans of paint in evidence. The defendants' counsel was permitted to cross-examine the witness before the question was passed upon by the court. The witness stated that he could only identify the lettered keg by the correspondence of a number on said keg with a number on the bill of lading; that he had not placed the number on the keg, and did not know who did. The defendants thereupon objected to the introduction of said lead and paint in evidence, for the reason that the same had not been proved to be the property of the United States, and further, that the lettering upon the keg was hearsay, and should not be admitted as so marked further than to identify the property as being the same found in the possession of the witness Hayden. The objection was overruled, and the keg and cans, with the lettering and number aforesaid, were submitted to the jury without limitation. One keg bore the number 402 stamped in the wood and in black paint the words, "Major Kimball, U. S. Army Quartermaster, Depot of New York." "Counsel for the defendant thereupon withdrew objection to the unlettered keg of lead and to the cans of paint and burlap bags, for the purpose of commenting upon the dissimilarity of condition as to marking and numbering between same and the lettered keg." Witness was then asked by counsel for the government to state to whom the kegs and cans belonged. Upon objection by the defendants, counsel for the government stated that the witness was offered as an expert, he being an army officer familiar with government property and the manner of marking same. Over the objection

and exception of the defendants the witness then stated that the *lettered* keg belonged to the United States, but that he could not identify the other keg and the cans of paint.

The defendant Rolls, on behalf of the defendants, testified to the effect that the lead and cans of paint in evidence were purchased by the defendant Jackson "from two young men," in the presence of the witness, for $3, and that, at Jackson's request, the witness undertook to sell, and did sell, the lead and paint to said Hayden for $5. The witness identified the burlap sacks in evidence as the ones in which the lead and cans of paint were wrapped when delivered to Hayden.

*Mr. P. J. Ryan* and *Mr. J. B. Archer, Jr.,* for the appellant.

*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia, and *Mr. F. Sprigg Perry,* Assistant, for the United States.

Mr. Justice Robb delivered the opinion of the Court:

It is here insisted that the court erred: (1) In refusing to exclude the number and lettering on the keg of lead as evidence of ownership by the United States, same being hearsay. (2) In admitting the opinion of the Army lieutenant, based on said letters and number, as to the ownership of the property.

The first assignment of error is obviously without merit. When the government offered the kegs and cans of paint in evidence, Lieutenant Matthews had already testified to the receipt by him of an invoice from the United States Army Depot at New York, containing kegs and cans of paint corresponding in detail with the kegs and cans offered. He also testified that upon one of the kegs was stamped the number of the invoice and words indicating its origin. One of the kegs offered in evidence bore the same number and words. The evidence then introduced clearly justified the court in permitting this exhibit to go to the jury. The entire exhibit corresponded in detail with the property missing from the government warehouse, and

·the. words and number on one of the kegs were on· one of the ·missing· kegs. Manifestly this latter circumstance would aid ·the jury in determining the identity of the property.

The second assignment is equally without merit. Lieutenant Matthews remembered the receipt of a keg bearing the mark-·ings on one of the kegs in evidence. These markings indi-cated to him· the origin and identity· of the property. He was not testifying in regard to property he had never seen. In other words, he was not giving an opinion based on the appear-ance of the keg, but, on the contrary, was identifying property which he had received and inspected. Concerning the other keg and cans of paint, he could only testify that they resembled those missing from the warehouse. The markings on this particular keg, however, enabled him to speak with more cer-tainty. Having previously received this keg so· invoiced and marked, he recognized it as the property of the United States. . ·Even though it had been established by other evidence that property so marked had been received by the government of-ficers at Fort Washington, the testimony of Lieutenant Mat-thews would· have been competent on this point, it appearing that he was especially qualified to testify as to the significance of such markings. *Connecticut Mut. L. Ins. Co.* v. *Lathrop,* 111 U. S. 618, 28 L. ed. 536, 4 Sup. Ct. Rep. 533.

Finding no error in the rulings appealed from, the judg-ment is affirmed with costs.                    *Affirmed.*