Bert JONES, Appellant,

v.

Donald C. SMITH, Administrator of the
Estate of Israel A. Smith, De-
ceased, Respondent.

No. 49614.

Supreme Court of Missouri,

Division No. 1.

Oct. 14, 1963.

Rehearing Denied Nov. 11, 1963.

Jack B. Robertson, Rogers, Field & Gentry, Kansas City, for appellant.

Fred J. Freel, John L. Sheridan, Sheridan, Baty, Markey, Sanders, Edwards & Carr, Kansas City, for respondent.

WELBORN, Commissioner.

■ This is an action for damages for personal injuries sustained in an automobile collision. Plaintiff, Bert Jones, was a passenger in an automobile owned by him and driven by his employee, Carl Willis, when it collided with a vehicle driven by Israel A. Smith. Smith died as a result of injuries sustained in the collision. Plaintiff instituted this action for $100,000 damages against the defendant as administrator of the estate of Israel A. Smith. Defendant filed a counter-claim against plaintiff for damages for the death of Israel A. Smith. A trial by jury in Jackson County Circuit Court resulted in a verdict against plaintiff on his cause of action and for defendant on his counter-claim in the amount of $10,000. After plaintiff's motion for new trial on his petition and defendant's counter-claim had been filed, the parties settled the counter-claim and the motion for new trial as to it was sustained. Thereafter, the counter-claim was dismissed, with a stipulation that its dismissal should not in any manner impair the right of plaintiff to prosecute the principal action against the defendant. Plaintiff's motion for new trial of his cause of action was overruled and he appealed to this court. Because of the amount in controversy, we have jurisdiction of the appeal. We will refer to the parties in this opinion as they appeared in the trial court.

We conclude that the judgment of the trial court should be reversed because of error in Instruction B given on behalf of defendant at the trial.

The collision out of which this cause arose occurred at between 9:45 and 10:00 A.M. on June 14, 1958. It occurred in

Daviess County on U. S. Route 69, about two miles north of the junction of Route 69 and State Route 6, called the "Altamont Junction." In the area of the accident, the traveled portion of Route 69 was asphalt over concrete and was between 19 feet and 21 feet in width. Shoulders on either side were 5 feet to 6 feet in width.

Plaintiff owned the 1958 Oldsmobile sedan which, on the day in question, his employee, Carl Willis, was driving, with the plaintiff as a passenger seated in the right front seat. Both Willis and plaintiff said that the vehicle was in good mechanical condition. Plaintiff and Willis were going from plaintiff's residence near Eagleville to Smithville, where plaintiff intended to purchase some hogs.

When plaintiff and Willis left plaintiff's residence at about 8:00 A.M., the sun was shining. However, as they drove south on Route 69, the weather became cloudy and, a short distance below Pattonsburg, rain began to fall heavily. According to Willis, he turned on the headlights, the windshield wipers and the defroster and reduced the speed of the car by approximately 10 miles per hour to 55 miles per hour. He drove through heavy rain for several miles at a speed of 55 miles per hour. While rain continued to fall and while driving at 55 miles per hour, Willis reached the crest of a hill. There, according to him, he saw the automobile driven by Smith, a 1957 Chevrolet of which Smith was the sole occupant, proceeding northward in the southbound lane of traffic about 100 feet in front of plaintiff's car. According to Willis, he turned his car sharply to the left and the right part of the front bumper and the right front fender of the Oldsmobile met the front of the Chevrolet on the left portion of the bumper. According to Willis, at the time of impact, his car was headed southeast and the Smith car northeast and parts of each car were in both lanes of traffic. The impact occurred in the northbound lane and south of the north end of a yellow "no-passing" line in the north-bound lane. According to Willis, the left front wheel of his car was 5 feet in the northbound lane at the time of the collision. Willis testified that he did not see the Smith car until he saw it 100 feet away in his lane of traffic as he came over the crest of the hill and that, until he swerved violently to the left, he had been operating his vehicle on the right side of the pavement.

After the collision, the vehicles came to a stop, with plaintiff's Oldsmobile in the northbound lane, headed in a southeasterly direction, with the left front wheel 3 feet to 4 feet on the east shoulder and the left rear wheel near the east side of the pavement. Smith's vehicle was headed east, with the rear portion practically across the southbound lane and the front in the northbound lane.

Plaintiff did not observe the collision. He was reading a letter at the time and the first thing of which he was aware was a violent swerve of his vehicle and an almost simultaneous crash "like a bolt of lightning." Smith died shortly after the collision of injuries which he received and Willis was the only eyewitness who testified concerning the actual collision.

Both Willis and plaintiff suffered injuries in the collision which required hospitalization. The extent of their injuries is immaterial to this appeal.

Plaintiff's petition charged Smith with negligence in failing to operate his vehicle on the right half of the roadway and in operating his car left of the center line in the lane of traffic reserved for southbound traffic. Defendant's answer and counterclaim charged plaintiff and Willis with negligence in failing to keep a careful lookout, operating at an excessive rate of speed and in operating plaintiff's car across the center of the highway and into the path of the Smith vehicle.

At the trial, Willis testified substantially as above set out. Persons who arrived at the scene testified that Willis told them

there that "he hit me" and that the driver of the other car was on his side of the road and that he swerved to avoid him.

The Daviess County sheriff testified that he observed a skid mark left by the tire of Smith's car at the scene of the collision. The mark started near the center of the highway in the northbound lane and went in a circle around into the west side or southbound lane of the highway, the length of the mark being about 15 feet.

The defendant's evidence included the testimony of Sergeant N. L. Eader of the Missouri State Highway Patrol, who investigated the accident. Sergeant Eader, who arrived some 30 minutes after the collision, testified that he found no debris in the southbound lane of the highway, but he did see dirt and mud on the east side in the northbound lane and debris on the shoulder on the east side. He observed two freshly made deep scratches or gouges in the north lane, one 3 feet east of the center line and the other 5 feet east of the center line. He found the marks to be 30 feet from the north end of the "no-passing" line in the northbound lane.

Sergeant Eader testified concerning tests of vision which he made a week before the trial at the request of defendant's counsel. On a clear day, he walked north from the gouge marks approximately 240 feet, over the crest of the hill. There he crouched down so that his eye level would approximate that of a person in a car. From that point, he could see the top of the next hill.

Arch Welch, a commercial photographer, testified on behalf of defendant. He identified various photographs which he made at the scene of the collision approximately one month after it had occurred. One photograph, taken with a camera lens 50 inches above the pavement and with the camera located 250 feet north of the gouge marks, showed the top of an automobile which was 250 feet south of the gouge marks. At a distance 265 feet north of the gouge marks, at the same lens level, an auto 265 feet south of the marks could not be seen in a photograph because of the intervening hill.

Doctor W. H. Tonn testified on behalf of defendant as an expert on automobile collisions. He found the grade of the highway from 100 feet north of the gouge marks to be upward at the rate of .8 of a foot per 100 feet for 100 feet. From that point on north the grade was down 2.6 feet per 100 feet for the next 100 feet and 3.5 feet for the following 100 feet. The grade south of the gouge marks was downward 1.7 feet per 100 feet.

He testified that the eye level of a driver of average height at 200 feet north of the gouge marks would be .7 of a foot below the crest of the hill; at 150 feet north, 3.2 feet above the crest, and at 100 feet, 4½ feet above the crest. The top of the Smith car, at 200 feet south of the gouge marks, according to the witness, would have been 2 inches above the crest of the hill; at 150 feet south of the gouge marks, the top of the Chevrolet would have been 2½ feet above the crest of the hill, and at 100 feet south of the gouge marks, the top of the Chevrolet would have been 3.3 feet above the crest of the hill. He also testified that, when two vehicles collide head on, the back ends fly up in the air and the front ends bear in and down to the pavement, and that, if the Oldsmobile was going faster than the Chevrolet, it would push the Chevrolet backward after the initial impact. He testified that, if the Oldsmobile collided with the front of the Chevrolet at an angle, the Chevrolet would be pushed backward and rotated in a clockwise direction to the left. He testified that the debris from the faster moving vehicle would be carried forward in the direction of travel and debris from the slower moving vehicle would be dropped at the point of collision.

At the outset of this appeal, we are confronted by defendant's contention

that the judgment should be affirmed because the plaintiff did not make a submissible case supported by substantial evidence of probative value. This contention is based upon the defendant's analysis of the testimony of witness Willis that he was traveling 55 miles per hour when he first saw the Smith car 100 feet ahead and that his vehicle and the Smith vehicle traveled approximately the same distance between the time that the Smith car first came into view and the time of the collision. Upon cross-examination, defendant's counsel elicited Willis' acknowledgment that the normal reaction time of the driver of a vehicle is three-fourths of a second and that a motor vehicle traveling at 55 miles per hour would travel approximately 60 feet in the reaction time. Applying these figures, defendant asserts that it would have been inevitable, according to Willis' testimony, that the cars would collide on the west side of the highway before either driver could have reacted to the situation. Defendant concludes that Willis' testimony is contrary to common knowledge and experience and to the known laws of physics and does not amount to substantial evidence of probative value.

We have, of course, in cases in which the ability of a driver to react by swerving, braking, signaling, etc., is a factor, determined the possibility of his action upon the basis of a normal reaction time of three-fourths of a second. De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 635; Hendershot v. Minich, Mo.Sup., 297 S.W.2d 403, 407. However, in such cases, we were determining whether the possibility of action existed, not whether action was taken. Here Willis asserts that he did act. Whether he reacted more promptly than the average driver or whether he mistook the distance between the vehicles when he first saw the Smith car (plaintiff is not conclusively bound by Willis' estimate of distance. Carlson v. St. Louis Public Service Company, Mo.Sup., 358 S.W.2d 795, 800; Rudin v. Moss, Mo.Sup., 349 S.W.2d 893; Highfill v. Brown, Mo.Sup., 340 S.W.2d 656),

the fact remains that he testified he did act and we cannot say that his testimony was manifestly impossible or untrue. Garrison v. Ryno, Mo.Sup., 328 S.W.2d 557, 561.

The case of Stephens v. Thompson, Mo. Sup., 293 S.W.2d 392, relied upon by defendant, presented a far different situation from that found here. That case involved a railroad crossing accident and this court concluded that the plaintiff should not be accorded any favorable inferences from the testimony of the railroad engineer as to distance. However, the difficulty there was that the testimony of the engineer as to the relevant distance varied from 500 to 1820 feet. We concluded that the wide, unexplained divergency made the testimony contradictory and without probative value. We cannot say that the testimony of Willis in this case is subject to the same objection.

The cases of Stonefield v. Flynn, Mo. App., 347 S.W.2d 472, and Kelly v. Terminal Railroad Ass'n of St. Louis, Mo.Sup., 315 S.W.2d 699, also relied upon by defendant, likewise involved wholly different factual situations, dealing with estimates of stopping distance which were rejected as incredible. Here we are, as above pointed out, not dealing with estimates of what might have been done but with testimony of what was done.

Defendant also contends that a directed verdict in his favor should have been ordered because the evidence showed that plaintiff, through Willis, was guilty of contributory negligence as a matter of law. He asserts that Willis' failure to see the Smith car until it was only 100 feet away was a failure to see what defendant asserts was plainly visible and therefore constituted contributory negligence as a matter of law. In this connection defendant relies upon Willis' testimony that he had visibility of 300 feet to 400 feet ahead without difficulty and up to 500 feet with some difficulty at the time of the collision. Defendant then relies upon photographic evidence and evidence of measurements by defendant's wit-

nesses regarding sight distances at the scene of the accident to show that, if Willis could have seen as far as 400 feet, he should have seen the Smith car at a minimum distance of 400 feet.

 Of course, the plaintiff is not bound by the testimony of defendant's witnesses. As to the photographs and the measurements and experiments of defendant's witnesses, we feel that such evidence did not amount to proof of facts or circumstances by the defendant which leave no other reasonable inference than that the plaintiff was guilty of contributory negligence. Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, 975. Consideration of such evidence in the light of all the circumstances, particularly the weather conditions, precludes any such conclusion.

The photographic evidence here is far different from that presented in Lohmann v. Wabash R. Co., 364 Mo. 910, 269 S.W.2d 885, relied upon by defendant. In that case, the question was the extent to which a building at the scene of a railroad crossing accident obstructed the view of the tracks of a person at the crossing. The photographic evidence in the case clearly established that the view was not obstructed to the extent that the plaintiff claimed. Here, at most, the photographs might have evidenced what could have been seen at varying distances on a clear, sunny day. Certainly, they did not establish incontrovertible, physical proof of what might have been visible in a rainstorm.

· We turn now to plaintiff's assignments of error.

Plaintiff's Instruction No. 1 submitted plaintiff's theory that, when the vehicle driven by Willis reached the crest of the hill, he, for the first time, saw Smith's car approximately 100 feet ahead being driven north in the southbound lane and that Willis, in an effort to avoid a collision, swerved his car to the left as Smith swerved to the right and the collision occurred.

The instruction called upon the jury to determine, if they found that Smith was driving to the left of the center line, whether or not such conduct was negligence and whether such negligence directly caused the collision.

On behalf of the defendant, Instruction A, his verdict-directing instruction on his counter-claim, and Instruction B, his defense of contributory negligence to plaintiff's claim, were given. Each instruction defined the liability of Jones for the negligence of Willis, and referred to the duty of a motorist to drive on the right half of the roadway. Instruction A then provided as follows:

"And so, if you find and believe from the evidence that Israel A. Smith was driving a Chevrolet automobile in a northerly direction on U. S. Highway 69 on June 14, 1958, on his own right hand side of the road, at approximately 10:00 A.M., and if you further find and believe from the evidence that at said time and place the Oldsmobile automobile in which plaintiff was riding was southbound on said highway and collided with the Chevrolet being driven by Israel A. Smith, and if you further find and believe from the evidence that said highway was a roadway in Missouri, and was at the time and place of collision of sufficient width to permit the Oldsmobile in which plaintiff was riding to drive upon his right or the west side of said highway, and if you further find from the evidence that the driver of the Oldsmobile in which plaintiff was riding failed to drive on the west half of said highway, but instead crossed over the center line of said roadway, into the east half of said highway, and came into collision with the Chevrolet driven by Israel A. Smith then such failure of the driver of the Oldsmobile in which plaintiff was riding to drive on the right or west half of the highway, if so, was negligence on his part; and if you further

find and believe that such negligence, if any, on the part of the driver of the Oldsmobile directly caused the collision mentioned in evidence and the death of Israel A. Smith, if so, and at the time Israel A. Smith was exercising the highest degree of care for his own safety, then your verdict shall be in favor of the defendant on defendant's counter-claim and against plaintiff on plaintiff's petition."

After the introductory material, Instruction B read:

"And so, if you find and believe from the evidence that Israel A. Smith was driving a Chevrolet automobile in a northerly direction on U. S. Highway 69 on June 14, 1958, at approximately 10:00 A.M., and if you further find and believe from the evidence that at said time and place the Oldsmobile automobile in which plaintiff was riding was southbound on said highway and collided with the Chevrolet being driven by Israel A. Smith, and if you further find and believe from the evidence that said highway was a roadway in Missouri, and was at the time and place of collision of sufficient width to permit the Oldsmobile in which plaintiff was riding to drive upon his right or the west side of said highway, and if you further find from the evidence that the driver of the Oldsmobile in which plaintiff was riding failed to drive on the west half of said highway, but instead crossed over the center line of said roadway, into the east half of said highway, and came into collision with the Chevrolet driven by Israel A. Smith, then such failure of the driver of the Oldsmobile in which plaintiff was riding to drive on the right or west half of the highway, if so, was negligence on his part; and if you further find and believe that such negligence, if any, on the part of the driver of the Oldsmobile directly caused or directly contributed to cause the colli-

sion mentioned in evidence and the death of Israel A. Smith, if so, then your verdict shall be in favor of the defendant and against plaintiff on plaintiff's petition, regardless of whether or not you may find Israel A. Smith was also negligent."

Plaintiff asserts that these instructions are erroneous for the reason that there was no evidence to support the submission in Instruction A that Smith was at all times on his right side of the road; that both erroneously instruct that, as a matter of law, Willis was negligent in driving to the left of the center line, and that both conflict with plaintiff's Instruction No. 1. Defendant, on the other hand, contends that the instructions properly presented his theory of the case, i. e., that Smith was operating his automobile on his right side of the road at all times approaching the accident and at the time the accident occurred, and that Willis, without cause or excuse, violated his duty to operate his automobile on the right half of the roadway. Defendant contends that the evidence supported the submission and that he was entitled to a submission on his theory even though the evidence of the plaintiff was contrary to it. He supports the submission of Willis' driving to the left of the center as negligence as a matter of law by the case of Harris v. Hughes, Mo.App., 266 S.W.2d 763.

As to Instruction B, defendant also asserts that any error in that instruction was non-prejudicial for the reason that the jury obviously decided the case on the basis of defendant's counter-claim instruction, Instruction A, and not on the basis of the contributory negligence instruction.

█ The defendant did, of course, have the right to submit to the jury his theory of how the accident occurred insofar as there was evidence to support such theory. Compton v. Meadows, Mo.Sup., 359 S.W.2d 673, 675. "The fact that the parties present conflicting and divergent theories of the manner in which the collision occurred does

not preclude one injured by violation of a statute from relying upon negligence per se." Lincoln v. Railway Express Agency, Inc., Mo.Sup., 359 S.W.2d 759, 764.

We have held that unexcused failure to drive to the right of the center of a highway of sufficient width is negligence per se. Melber v. Yourtee, Mo.Sup., 203 S.W.2d 727; Wilhite v. City of St. Louis, 359 Mo. 933, 224 S.W.2d 956.

■ In his Instruction No. 1, plaintiff relied upon the well-recognized exception to the rule requiring driving on the right side of the road which permits a jury to determine whether or not a driver who swerved to the left of the center in an emergency, when there was reason to apprehend a collision by reason of another driver's operating his vehicle on the wrong side of the road, did what a person exercising the highest degree of care would have done in similar circumstances. Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541; Filkins v. Snavely, 359 Mo. 356, 221 S.W.2d 736; Helton v. Huckeba, 365 Mo. 93, 276 S.W.2d 78.

■ Basically, there need be no fundamental inconsistency between the proper submission of the theories of both parties in this case, assuming that the evidence warrants. Helton v. Huckeba, supra. However, the difficulty in this case arises out of the manner in which the theories were submitted, particularly in defendant's Instruction B. In that instruction the direction is that, if the jury finds that the collision occurred on Smith's side of the road, the jury should find that the plaintiff was negligent and find for the defendant, if such negligence was the sole or contributing cause of the collision, even though the jury might also find Smith negligent. There was no disagreement between the parties that the collision occurred on Smith's side of the road. The basic factual question was why the collision occurred there. The only negligence on the part of Smith, which was submitted by the plaintiff, was in driving on the

wrong side of the road. The effect of Instruction B was, therefore, to tell the jury that, as a matter of law, Willis was negligent in driving into Smith's lane even though Smith had been negligent in driving in the wrong lane. In that respect the instruction clearly conflicts with plaintiff's Instruction No. 1 which correctly declares the law in such situations. The defendant's instruction, therefore, should not have been given. Marsh v. Heerlein, Mo.Sup., 299 S.W.2d 441, 445; Jones v. Hughey, Mo. Sup., 283 S.W.2d 550, 554.

■ Defendant asserts that, even if Instruction B was erroneous, the error was non-prejudicial because it is evident that the jury determined the case on the basis of defendant's counter-claim instruction, Instruction A, and not on the issue of contributory negligence. The jury did find for the defendant on his counter-claim. However, there is no reason to assume that the jury first considered that issue. An equally logical and reasonable procedure would have been for the jury to have considered first the plaintiff's cause of action and then defendant's counter-claim. Should the jury have followed such course, they would inevitably have considered defendant's Instruction B, which we find to be erroneous. Certainly, there is no reason to presume that the jury followed one or the other of the courses available to them. Inasmuch as the counter-claim has been dismissed and we have concluded that Instruction B was erroneous, there is no necessity to pass upon the objections to Instruction A.

■ In view of the fact that the questions may recur on a new trial, we turn briefly to plaintiff's contentions of error based upon the admission of testimony of defendant's expert witness, Doctor Tonn, and the photographic evidence identified by defendant's witness Welch. As to Tonn's testimony, plaintiff objects that such matters concerning which the witness testified as the eye level of a driver of a 1958 Oldsmobile, what would happen when vehicles collide head on at various speeds and angles,

what he would expect to find in the road after a collision, and which wheel of a Chevrolet would carry the weight upon an assumed impact, were not proper subjects for expert testimony. The testimony as to the eye level was merely to establish the measurements used in computation of sight ranges. As to the other matters, the rule is that "the necessity for admission of expert testimony in a given situation rests in the first instance in the sound discretion of the trial court, and its decision in those respects is not to be set aside in the absence of showing of an abuse of discretion." Yocum v. Kansas City Public Service Company, Mo. Sup., 349 S.W.2d 860, 864. The transcript here shows that the trial court carefully limited the witness' testimony, particularly as to matters of opinion relating to questions of common knowledge and also on the strongly contested issue of the angle at which the vehicles collided. As to the matters concerning which Tonn was permitted to testify, there is no contention that his testimony was irrelevant. Indeed, plaintiff's objection is based upon the damaging effect of the testimony on plaintiff's case. In view of the careful limits by which the trial court circumscribed the testimony of Tonn, and in view of the nature of the matters concerning which testimony was admitted, we could not conclude that the trial court was in error in its rulings. Yocum v. Kansas City Public Service Company, supra.

■ As to the photographic evidence, plaintiff asserts that defendant's exhibits G, Q and R, taken with the testimony of Welch, are experiments to determine range of visibility at the scene of the collision, yet they were made under weather conditions far different from those existing at the time of the collision. Obviously, the photographs were taken on a clear, sunny day and there is no dispute that the collision occurred during a heavy rain. Defendant asserts, however, that the photographs are line of sight photographs, designed to show the physical facts

at the hill crest north of where the collision took place. The three exhibits were introduced together, and in identifying the first concerning which he testified, exhibit R, Welch stated: "The purpose for making this photograph was to show line of sight over the hill crest, * * *." As with expert testimony, the admission of photographic evidence is a matter primarily for the trial court's determination. Brock v. Gulf, Mobile and Ohio Railroad Co., Mo. Sup., 270 S.W.2d 827; Gray v. St. Louis-San Francisco Ry. Co., 363 Mo. 864, 254 S.W.2d 577. "It has often been held that photographs of locations or of objects are admissible in evidence even though taken long after the event and when changes have occurred, if the extent of such changes is explained. Carver v. Missouri-Kansas-Texas R. Co., 362 Mo. 897, 245 S.W.2d 96, 104; Reed v. Coleman, Mo.App., 167 S.W. 2d 125, 133 (15)." Brock v. Gulf, Mobile and Ohio Railroad Co., supra, l. c. 833.

■ Here, the jury was made fully aware of the difference in conditions at the time of the collision and at the time of the taking of the photographs. Furthermore, Willis testified that his range of visibility extended as far as 500 feet, the maximum distance at which the exhibits tend to show range of visibility. In this situation, we would not hold that the trial court abused his discretion in admitting the photographs for the sole purpose of showing sight distances and the physical facts at the scene of the collision.

The judgment is reversed and the case remanded.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.