Joe **JEFFERSON**, Appellant,

v.

Susan B. **BIGGAR**, Respondent.

No. 51932.

Supreme Court of Missouri, Division No. 2.

July 10, 1967.

Robert L. Shirkey, Kansas City, for appellant.

Thomas J. Leittem, John H. Altergott, Jr., Shughart, Thomson & Kilroy, Kansas City, for respondent.

EAGER, Judge.

This is an action for personal injuries arising from the collision of two automobiles. The collision occurred in the intersection of 71st Street, otherwise known as Gregory Boulevard, and the northbound lanes of Ward Parkway in Kansas City on the morning of June 3, 1964. Ward Parkway is a divided road with a wide medial strip. The verdict was for defendant on plaintiff's claim and for plaintiff on defendant's counterclaim, which was merely for property damage. Only plaintiff has appealed, and since he sought to recover

$25,000, we have jurisdiction. No question is raised on the sufficiency of the evidence. The two points of appellant's brief concern the alleged incompetency of certain evidence and the giving of defendant's instruction on contributory negligence.

Plaintiff was a janitor and maintenance man for a real estate firm located near 63rd and Brookside, on the Brookside Plaza; he also did maintenance work in apartment buildings operated by it, and he was on his way to such a building at the time of this collision. Defendant was a housewife and she was transporting seven school children north on Ward Parkway. At this point Gregory was 40 feet wide from curb to curb; the northbound lanes of Ward Parkway (consisting of three lanes) were 30 or 32 feet wide. The intersecting curbs were rounded, so that Gregory expanded as it entered the Parkway. A pedestrian cross-walk on Gregory was set back perhaps 25–30 feet from the east curb of Ward Parkway. There were residences all along the south side of Gregory and trees in the space between the curb and the sidewalk both on Gregory and Ward Parkway; the residence and yard on the southeast corner were raised a few feet above the street level and there was shrubbery and also at least one tree in the yard on the Gregory side. The intersection was and is normally controlled by traffic lights which are plainly visible to traffic approaching from all directions. Plaintiff was driving a 1957 Chevrolet station wagon, defendant a 1964 Chevrolet station wagon.

According to undisputed evidence from the Kansas City Power and Light Company, the traffic lights at this intersection were not functioning from 9:03 to 9:45 a.m. on that day, due to some malfunction in the circuit covering that area. Thus, the precise time of the collision was material. Plaintiff testified that he "checked out" of his place of employment at 9:30 to go to a specific job; that he picked up some material in the basement, got his car from the lot, traveled on Brookside Road to Gregory, and that in his best judgment he reached the intersection at 9:45. He further testified: that he was traveling (west) slightly to the right of the center line of Gregory, that there were no cars ahead of him, and that he saw from "a hundred feet" the green traffic light; that he then "slightly looked to my left," (the direction from which defendant came) but couldn't see very far "for this blind corner," and he saw no cars; he then "slightly looked to my right," then looked ahead "at the light that was green," did not look back to his left, and "kept on going" across at about 25 miles an hour. He did not recall seeing defendant's car prior to the collision. Plaintiff's car came to rest on the medial strip, and he testified that he did not remember anything else clearly for three days; he further testified that he did not swerve, did not apply his brakes, sounded no horn, and did not slow down. He related in some detail his prior activities to explain the reason why he thought the collision occurred at 9:45.

The defendant's version of the affair, as expected, was substantially different. She testified: that "to her knowledge" the collision occurred between 9:15 and 9:30; that from a distance of about two blocks south of the intersection she saw that the traffic lights were "out"; that she looked again before she entered the intersection and that the lights were still out; that a car in front of her turned right on Gregory and she slowed; that she looked to her right on Gregory and saw no car, this apparently from a point about three car lengths south of Gregory; that she entered the intersection at 15–20 miles an hour and was about half way through it when she saw plaintiff's car "off the front corner" of her car; that she was afraid to turn left, thinking that plaintiff might hit the rear of her car where the seven children were; that she applied her brakes fully and immediately and almost stopped; that just before the impact plaintiff "jerked up and looked at me," turned to his right and went off into the parkway (medial strip); that she

moved her car out of the intersection. She was uncertain as to the source of a statement in a report of accident made by her to the effect that the collision occurred at 9:45 a.m.; she stated that "they" probably took it from the police report, and explained in detail (from a recital of the school activities) why she believed it occurred earlier.

Manfred W. Guenther, an officer of the Kansas City Police Department, called by the plaintiff, arrived at the scene at 10:00 a.m., having received the call at about 9:48; he talked to plaintiff and defendant and to two witnesses whose names and addresses he took; he listed the time of the accident as 9:45, but stated that this was his own estimate from talking to the drivers and the witnesses, and that he could not recall definitely whether he asked the defendant that question; that defendant stated that she first realized the danger when plaintiff was one car's length away and when she was traveling at about 15 miles an hour; that plaintiff told him that he had a green light and did not "realize any danger prior to the impact"; that plaintiff's car left no skidmarks; that defendant's car left 12 feet of "actual skid," or 22 feet of "overall" skid, which led to a point 39 feet north of the south curb of Gregory and four feet west of the east curb of Ward Parkway, before breaking to the left; at one time he testified to debris or "shake-down" at that location but later indicated that he had fixed the point only by skidmarks. On cross-examination, after the officer had given the names and addresses of the two witnesses whom he had interviewed, he was asked whether he had asked them whether the traffic lights were "out or functioning"; this was objected to as hearsay and for the reason that plaintiff would have no right of cross-examination; the objection was overruled and the witness replied that "Both of the witnesses stated to me that the lights were not functioning, that they were completely out at the time the accident occurred," and that his report reflected this.

Both of the witnesses referred to by the officer appeared and testified for the defendant. One, Robert L. Cunningham, had stopped in the medial area, going east on Gregory, waiting for the traffic to clear. He testified: that he actually saw the collision; that all the traffic lights were out; that he saw plaintiff's car but did not pay much attention to it until he saw that it was not going to stop; that he also saw defendant's car coming north and intended to cross after it passed; that plaintiff did not slow up; that defendant "hit her brakes" and almost stopped; that after the collision he proceeded on across, parked his car and came back to the scene, and that the lights were still out at that time; that he gave his name to the officer and told him that the lights were off. On cross-examination counsel for plaintiff questioned the witness further about the lights, and developed the fact that after the collision he had "deliberately looked" at the lights because he figured that the "question" would come up later. In the judgment of this witness the lights came back on about five minutes after the collision. This witness (on recross-examination) identified a written statement he had given to plaintiff's counsel and was examined concerning it, but the offer of the statement in evidence was refused. The other witness, Michael Royse, had stopped in the southbound lanes of Ward Parkway at Gregory, saw that the traffic lights were out, saw plaintiff's car coming west, and saw the accident. He testified: that the lights remained out for 5–10 minutes after the collision; that he told the officer that the lights were out at the time; that he first went to look at the cars, and then went back and moved his car at which time he saw that the lights were still out.

The damage to plaintiff's car was at the left front door. The principal damage to defendant's car was to the front of the right fender, the extreme right headlight and the hood. The ordinances of Kansas City concerning signal lights at controlled intersections, right of way at uncontrolled intersections, and speed at uncontrolled intersections were offered and received in

evidence. Motions of defendant for a directed verdict were overruled. We shall refer to certain instructions hereinafter.

■ The first point made by plaintiff is that the court erred in receiving the testimony of the officer that the witnesses told him that the traffic lights were out; this, plaintiff says, was pure hearsay, depriving him of the right of "confrontation" of these witnesses. There is no doubt that the statements as testified to were hearsay unless admissible as res gestae, a theory which defendant urges. We have no difficulty in ruling that these statements were not admissible as res gestae. They were made at least 15 minutes after the collision, they were not spontaneous utterances, they were made after a lapse of time permitting thought and deliberation, and they constituted mere narrative descriptions of an event; they were not, in any sense, utterances initiated by shock, tension or excitement. The only case which defendant cites on the subject, Wren v. St. Louis Public Service Co., Mo., 333 S.W.2d 92, is a definite authority against her. But see also: Sconce v. Jones, 343 Mo. 362, 121 S.W.2d 777; Roush v. Alkire Truck Lines, Inc., Mo., 299 S.W.2d 518; Alberty v. Sunshine Biscuit Co., Mo., 321 S.W.2d 418; McKenzie Transport Leasing Co. v. St. Louis Public Service Co., Mo.App., 349 S.W.2d 370; Gough v. General Box Co., Mo., 302 S.W.2d 884; Meyers v. Smith, Mo., 300 S.W.2d 474.

Thus, we find that the statements were hearsay; plaintiff's statement to the officer concerning the lights was also hearsay and self-serving. Defendant urges that the controverted statements were rendered admissible upon the theory of "Curative Admissibility." The argument is, in substance, that the officer was plaintiff's witness, that his counsel brought out plaintiff's hearsay and self-serving statements on direct examination, and that these, admitted without objection and coupled with other miscellaneous matters taken from the report, opened up the issue of the status of the lights for rebutting hearsay. Counsel

cites: Sigman v. Kopp, Mo., 378 S.W.2d 544; Kelley v. Hudson, Mo.App., 407 S.W.2d 553; Dorn v. St. Louis Public Service Co., Mo.App., 250 S.W.2d 859; Young v. Dueringer, Mo.App., 401 S.W.2d 165.

■ The theory is discussed at some length in Wigmore on Evidence, 3rd Ed., § 15, p. 304, where three different and divergent rules are stated, and much conflict indicated. The author cites at least one Missouri case (by no means recent) in support of each rule. Wigmore's statement of the third rule (namely), "that the opponent may reply with similar evidence *whenever it is needed for removing an unfair prejudice which might otherwise have ensued from the original evidence,* but in no other case," seems to have received some recent acceptance in Missouri; see Biener v. St. Louis Public Service Co., Mo.App., 160 S.W.2d 780, 786 and cases there cited, holding that at least the trial court should not be convicted of an abuse of discretion in permitting subsequent testimony of the same character under the circumstances indicated by Mr. Wigmore. See also the cases which defendant has cited, as listed supra. There are differences in the facts here and those in most of the cited cases; for instance, the statements now objected to were not mere continuations of a single conversation partially admitted, they came from persons not parties to this controversy, and the parties making them were not unavailable at the trial. We have the view that it is unnecessary to extend the doctrine to the facts of this case, and in so holding we note what the St. Louis Court of Appeals so aptly said in Young, supra, 401 S.W.2d at loc.cit. 168: "While we do not have a feeling of complete assurance as to the limits of the doctrine of curative admissibility, we do feel constrained here by the rationale employed by the Supreme Court in Sigman v. Kopp, supra [Mo., 378 S.W.2d 544]."

The question which we now consider is whether the statements of the two witnesses to the officer that the lights were not working were substantially prejudicial to

the plaintiff. We have concluded that they were not. Plaintiff cites as his sole authority the case of Meyers v. Smith, Mo., 300 S.W.2d 474. There, following a one-car accident in which one girl was killed and several other young persons injured, the only real issue was the identity of the driver, i.e., whether it was a boy called "Diz," who was the son of the owner, or an under-age girl. The plaintiff showed that "Diz" had stated to three or more persons very shortly after the accident that he was driving, and that some of the other occupants had likewise stated the same thing. A highway patrolman was permitted to testify that, while he was taking three of these persons to the hospital, "they" stated that "Diz" was driving. At the trial "Diz" and the other survivors all testified that the girl was driving, and it was further developed that he had told the others immediately after the accident to "remember that he was driving the car," because his father had told him not to let anyone else drive. The testimony of all such post-accident statements was objected to as hearsay but it was admitted by the trial court, primarily on the theory of res gestae, and the judgment was reversed for its admission. We are concerned here only with the question of the prejudicial effect of the statements as there received. The Court held that the evidence was prejudicial, with emphasis on that of the highway patrolman because of what the public regards as his "exalted official position." The Court further said, however, at loc. cit. 479: "In considering prejudicial effect there is another view of all this evidence in addition to its being employed testimonially; its effect, undoubtedly, was to impeach the two girls and the boy, or their testimony, before they testified and regardless of what they might say." It will be noted that the statements there received were directly contradictory of the testimony of the same persons at the trial; most of those witnesses were not asked at the trial about their prior statements; and the testimony of the officer and of the others who related post-accident statements was necessarily at war with the trial testimony of those making the statements.

■ In our case the two witnesses (being the only two mentioned) testified at the trial, verified everything the officer had said concerning them and testified most positively that the traffic lights *were* in fact out at the time of the collision. Thus, there never was any divergence between what these witnesses said and what they were quoted as saying. They were vigorously cross-examined, and thus there was "confrontation," although slightly delayed. The plaintiff stuck to his story, defendant stuck to hers, and the witnesses stuck to theirs; also, plaintiff's post-collision hearsay and self-serving statement that he had the green light remained in evidence. We see no substantial prejudice to plaintiff's case.

On this subject each case necessarily rests on its own particular facts; cases might be cited which would indicate prejudice or nonprejudice, but the facts would differ. Generally, on the result we have reached, but not on similar facts, see: Kagan v. St. Louis Public Service Co., Mo. App., 334 S.W.2d 379; Williams v. Miller Pontiac, Mo.App., 409 S.W.2d 275; LaMantia v. Bobmeyer, Mo.App., 382 S.W.2d 455; Pope v. St. Louis Public Service Co., Mo., 341 S.W.2d 123; Marlow v. Nafziger Baking Co., 333 Mo. 790, 63 S.W.2d 115; Connecticut Mutual Life Ins. Co. v. Lathrop, 111 U.S. 612, 4 S.Ct. 533, 28 L.Ed. 536, 540. In Wallendorf v. Rensing, Mo., 329 S.W.2d 779, the admission of an after-collision statement of a driver who was not a party, and which was merely corroboratory of his subsequent testimony, was held not to be prejudicial, although a specifically self-serving statement of a defendant, taken considerably later and after time for reflection, was held to be prejudicial. We note further here that the trial court overruled plaintiff's motion for a new trial, which contained a specific assignment of error on the admission of these statements. It would seem that the Court necessarily

ruled that the admission of the statements was nonprejudicial, if erroneous, and we see no reason to set aside the exercise of its discretion. Nor do we independently find that the admission of this evidence constituted error "materially affecting the merits of the action." Rule 83.13(b).

The other point concerns the instructions. The Court gave for plaintiff MAI 17.01 which submitted *only* a violation of the traffic signal by the defendant, with a concluding reference to defendant's contributory negligence Instruction No. 3. That instruction stated that the verdict would be for defendant on plaintiff's claim *if* plaintiff: "failed to yield the right of way, or failed to keep a careful lookout, or drove at an excessive rate of speed," followed by the usual required findings of negligence and causation or contribution. This was listed as MAI 28.01-modified. Plaintiff's point is that this instruction, No. 3, in submitting the issue of *right of way*, ignored plaintiff's submission and required no finding that the traffic lights were not operating. Thus, counsel says, the jury was misled, the giving of the instruction was a positive misdirection, and an inconsistency was created.

■ The cases cited concern generalities which require no discussion as, for instance, that instructions which exclude an issue are erroneous, that inconsistencies between instructions constitute reversible error, and that the instructions as a whole must not mislead. It is true that Instruction No. 3 was submitted upon a wholly different theory from that of plaintiff, but the defendant had a perfect right to submit an instruction affirmatively based upon her theory and her evidence, or to converse plaintiff's instruction, or to do both. Boedeker v. Wright, Mo., 312 S.W. 2d 829; Compton v. Meadows, Mo., 359 S.W.2d 673; Jones v. Smith, Mo., 372 S.W.2d 71. The issues for the jury here were comparatively simple. Any ordinary jury would know that in order for defend-

ant to violate the traffic signal, it must have been operating; *if not*, then plaintiff could not recover under his Instruction No. 2. But the Court also gave Instruction No. 8, as follows:

"The phrase 'right of way', as used in these instructions, means the right of one vehicle to proceed ahead of the other.

"With respect to an uncontrolled intersection, when two vehicles do not reach said intersection at approximately the same time, the vehicle which enters the intersection first has the right of way."

■■ All instructions must be considered together, and (under the ordinances of Kansas City) No. 8 was a proper explanation of the "right of way" issue submitted in Instruction No. 3. We thus hold that the jury was required to find that the intersection *was at the time* an uncontrolled intersection, before it could find plaintiff negligent for failing to yield the right of way. This was entirely consistent with defendant's theory and evidence. The instruction was not inconsistent with No. 2, for a finding for plaintiff based on that required precisely the opposite finding, namely, that the traffic lights *were* operating and the intersection was controlled. On this issue the jury was merely required to find: (1) whether the traffic lights were functioning; (2) whether, if so, defendant violated the light; and (3) if not, whether defendant had the right of way and plaintiff failed to yield. We see no conflict and no inconsistency, but a mere submission of proper, though divergent, theories supported by substantial evidence. Plaintiff makes certain references in this point to the argument of defendant's counsel. No point of error is made on the argument and the instruction is either good or bad on its face. There was no error in giving Instruction No. 3.

Finding no prejudicial error the judgment is affirmed.

All of the Judges concur.