Steven L. MILLS, Plaintiff-Respondent,

v.

KEITH MARSH CHEVROLET, INC., Defendant-Appellant.

No. 27925.

Missouri Court of Appeals, Kansas City District.

April 4, 1977.

Wendell E. Koerner, Jr., St. Joseph, for defendant-appellant.

Errol D. Taylor, Utz, Litvak, Thackery, Utz & Taylor, St. Joseph, for plaintiff-respondent.

Before WASSERSTROM, P. J., and SOMERVILLE and TURNAGE, JJ.

TURNAGE, Judge.

Steven Mills brought suit against Pappas Chevrolet, Bill Allen Chevrolet and Keith Marsh Chevrolet, Inc., for the sale of an automobile which Marsh represented to be new and to have been driven only 137 miles, and which Mills alleged had been driven 3,000 to 5,000 miles. The court directed a verdict in favor of Pappas Chevrolet and Bill Allen Chevrolet. No appeal as to those defendants was taken. The jury awarded Mills $914.88 actual damages and $5,000 punitive damages against Marsh.

On this appeal Marsh contends (1) there was not sufficient evidence to show the automobile had been driven in excess of 137 miles at the time of sale; (2) there was insufficient evidence to show Marsh knew the representation concerning the 137 miles was false; (3) the court submitted a different cause of action to the jury then was pleaded; (4) the court erred in refusing to allow the jury to view the automobile; (5) the court erred in admitting evidence consisting of a security agreement and hearsay, and (6) the award of punitive damages is excessive and the result of bias, passion and prejudice. Affirmed.

Mills purchased a 1973 Chevrolet Nova Hatchback from March in July, 1973. The evidence showed this car had been delivered by Chevrolet to Pappas Chevrolet in Kansas City. The car was subsequently delivered by Pappas to Bill Allen Chevrolet. The general manager of Bill Allen Chevrolet testified the car was delivered to Marsh in May, 1973, and at that time the odometer showed 76 miles. Allen corrected a rattle in the wheel deep well in the trunk by doing a support weld and also refinished the · rear deck lid. Allen also removed a scratch from the left front fender. This car did not have a Marsh dealer emblem on it when delivered to Marsh. The manager stated when the car was delivered to Marsh it had new tires.

Marsh admits the automobile was sold to Mills with the representation it was new and had been driven only 137 miles. After Mills took delivery of the automobile, he noticed water in the rim of the spare tire in the trunk, rust under the mat in the bottom of the tire well, the label on the spare tire pressure can was wet and had fallen off, and scratches on the chrome side trim on both sides. He also noticed the paint appeared to be speckled or spotty on the side of the hatchback and glue dripping around the outside of the rear speaker behind the back seat. He further noticed one of the rubber strips on the back bumper was loose.

Mills later observed an overspray of paint on the hatchback latch as well as paint overspray on the Marsh dealer emblem, on the chrome of the left taillight and on the gas cap. He further noticed the welding and rust under the mat in the spare tire well and a welded spot behind the gas cap. The chrome stripping on the lower edge of the rear window was not put together exactly and this also contained paint overspray.

Mills stated the tailpipe and the underside of the car were rusted. He observed chip marks in the paint on the window channel on the driver's side and the heater cover inside the car was scuffed. There was a tear in the upholstery on the side panel of the front seat.

Mills took the automobile back to Marsh two days after the purchase and showed an employee most of the defects described above. The employee stated nothing could be done, but a factory representative would have to examine the car. When the factory representative looked at the car sometime later, he declined to take any action.

Mills took the car back to Marsh at least two or three times but was unable to get any explanation as to the welding near the gas cap, the rust on the undercarriage, the paint overspray, and the chipped paint. Mills' father accompanied him on the last visit and at that time they talked with Keith Marsh. Mr. Marsh looked at the car

and stated it was in a deplorable condition and should never have left the lot. Mr. Marsh told the Mills he would repair the car, but Mills requested a new Nova be given to them. Marsh refused to replace the car.

Mills last drove the car on August 1, 1973, when the odometer showed 1,348.8 miles.

Mills produced a body repair expert who stated he had examined Mills' automobile. This witness stated in his opinion the car had suffered damage to the rear. He stated the rear body panel had been repainted, there was still a dent in the rear bumper and a dent had been repaired high on the left rear quarter panel. This repair had been spot painted with overspray on the molding. He further stated the gas cap had been painted, which was never done at the factory. He testified the trunk latch had been rewelded because it was not a factory weld. He examined the air cleaner and considered it dirtier than would be expected for a car with the number of miles shown. He observed oil leaking out of the transmission and evidence of water leaking around the hatchback.

He observed a lot of rusting on the floor panel in the trunk. He also stated the undercarriage and exhaust system were extremely rusty. He observed the overspray of paint on the Marsh emblem on the rear of the car.

This witness stated the rust on the exhaust pipe could only have been caused by the pipe being hot and subsequently cool, as occurs when a car is driven. This witness stated in his opinion the automobile had been driven from 4,000 to 5,000 miles.

Mills further produced a tire expert who stated tires on new cars came with ¹²/₃₂ inch tread depth. He measured the tread depth on Mills' car and found it to be ¹⁰/₃₂. Based on this measurement, this witness stated in his opinion the automobile had been driven 5,000 to 6,000 miles.

█ Marsh first contends Mills failed to show by sufficient probative evidence the automobile had been driven in excess of 137 miles at the time Mills purchased it. It is

well settled the evidence must be viewed in the light most favorable to the plaintiff who is to be given the benefit of all reasonable inferences to be drawn therefrom. *Ackmann v. Keeney-Toelle Real Estate Company,* 401 S.W.2d 483, 488[2–5] (Mo. banc 1966). The evidence outlined above is more than sufficient to support a finding by the jury on this issue.

█ Marsh next contends the evidence does not show his company's knowledge of the falsity of the representation the automobile had only been driven 137 miles. It is, of course, true that Mills had the burden to prove a submissible case and to do this by adducing substantial evidence of probative value or by inferences reasonably drawn therefrom. *Bridgeforth v. Proffitt,* 490 S.W.2d 416, 422[6] (Mo.App.1973). Marsh contends there was absolutely no evidence to show he had any knowledge the car had been driven in excess of the miles represented because there was no direct evidence from anyone stating they had either driven the car or had seen the car driven while in the possession of Marsh. However, Mills was entitled to all of the inferences reasonably to be drawn from the evidence and may further prove his case by circumstantial evidence. Circumstantial evidence has been broadly defined as " 'evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist.' " *Bridgeforth* at p. 422[6]. The court in *Bridgeforth* further stated on the same page:

" '[T]he inference drawn must be reasonable, and may not be arrived at by speculation or conjecture. But neither is the inference to be precluded by speculation or conjecture, or by a mere possibility that the contrary may be true. . . . Probabilities, not possibilities, are controlling. It is not required that an inference be justified beyond all doubt.' [Citations omitted] . . . 'the showing of circumstances must be such as indicates to reasonable minds the cause and source of the fire, not leaving it to mere conjecture or speculation, and must be sufficiently strong and complete to reasonably elimi-

nate the "probability" of any other source or cause.' "

The court further observed that circumstantial evidence is not required to have the quality of absolute certainty.

■ Here, the evidence adduced by Mills of damage to the automobile, of wear in the tires, of paint overspray, especially on the Marsh emblem, the rust on the exhaust pipe, dirt on the air cleaner, all combine together to allow the jury to draw a reasonable inference the car had been operated far in excess of 137 miles. These facts further were sufficient to justify the jury in drawing the inference that such use occurred after the car had been delivered to Marsh and in this circumstance that such use had to have been with the knowledge of Marsh.

Of course the testimony on the part of Marsh which indicated a lack of knowledge the car had been operated, and testimony on the part of Marsh to the effect the car had not left his lot, presented questions for the jury to resolve in the matter of credibility, weight and value to be accorded to such testimony. *Bridgeforth* at p. 423.

The jury resolved the issues against Marsh and because Mills made a submissible case to show Marsh had knowledge of the excess mileage, this contention by Marsh is overruled.

■ Marsh next contends Mills filed his suit on a theory of rescission of contract and yet submitted to the jury a theory of damages for fraud in the misrepresentation as to the mileage. Mills' petition alleged the necessary elements involved in a claim for damages for fraud, and, in addition, requested rescission of the contract. The prayer of the petition may be disregarded in determining what relief is authorized by the facts pleaded. *S———— v. W————*, 514 S.W.2d 848 (Mo.App.1974). The petition contains sufficient averments as to fraud to authorize a submission to the jury for damages on that theory. The election between a cause of action for damages and for rescission is not made by the filing of the suit. *Hart v. Midkiff,* 321 S.W.2d 500, 505[1–3] (Mo.1959). In addition, Rule 55.06 allows

claims to be joined either independently or in the alternative. Since the petition in this case pleaded sufficient facts to state a claim for damages based on fraud, Mills did not make an election at the time he filed his petition as between rescission or damages for fraud. He was authorized to make an election at the time the cause was submitted to the jury on the theory of fraud under the evidence which made a submissible case on that theory.

■ Marsh requested, during the trial, that the jury be requested to go outside the courthouse to view the automobile. The refusal of this request is assigned as error. The rule in this situation is stated in *Zipp v. Gasen's Drug Stores, Inc.,* 449 S.W.2d 612, 619[9–10] (Mo.1970) in which the court quoted from an earlier case as follows:

> " 'A view is not a matter of right but rests in the sound discretion of the trial judge as to whether it is proper or necessary to enable the jury to obtain a clearer understanding of the issues involved or to make a proper application of the evidence. "It is only when there has been a flagrant abuse of this discretionary power that this court will interfere." ' "

Here Marsh had admitted the car was in a deplorable condition and did not deny the existence of the defects and repairs and body painting which Mills' evidence showed. There is no showing the testimony of the witnesses, together with the photographs of the automobile introduced in evidence, left any question about the condition of the car unanswered. In this circumstance it was not a flagrant abuse of discretion for the court to refuse the request to have the jury view the automobile.

■ Marsh next alleges error in the admission of certain evidence. The first item to which objection is made was a security agreement which Mills signed, together with his father, in order to obtain a loan to purchase this automobile. This agreement showed the amount borrowed and the percentage of interest, together with the amount of interest which would be repaid. Marsh contends this exhibit is irrelevant

and its admission was prejudicial because the jury might have taken into consideration the amount of interest Mills was paying in assessing damages.

The jury was properly instructed as to the measure of damages and there is no contention the amount found as actual damages is not within the evidence as to the difference in the value of the car as represented and its value in its actual condition. It is difficult to believe this could have misled the jury. In that situation it was not prejudicial to admit the exhibit. This is not to say the exhibit should have been admitted because under the circumstances it was irrelevant. However, "error without prejudice is no ground for reversal." *Neavill v. Klemp,* 427 S.W.2d 446, 448[8–10] (Mo.1968); Rule 84.13(b).

The other item of evidence about which Marsh complains concerns testimony by Mills in which he stated repairmen had told his father the car had been wrecked and the tires showed more wear than the odometer indicated. As previously indicated, a body repairman and a tire expert did testify for the plaintiff and both testified fully as to these statements which Mills related in his testimony. The statements Mills was allowed to make were hearsay, but since the repairmen did testify in person, were cross examined, and since their testimony was the same as indicated by Mills in his limited reference to what they had said, there was no prejudice in admitting this hearsay. *Jefferson v. Biggar,* 416 S.W.2d 933, 938[3] (Mo.1967). The *Jefferson* case involved an identical situation in which hearsay had been related about certain witnesses and those witnesses later testified in person to the same facts and were extensively cross examined. The court in that case found admission of the hearsay was not prejudicial.

Lastly, Marsh alleges the verdict for punitive damages is excessive and the result of bias, passion and prejudice on the part of the jury. The argument under this point relates to the erroneous admission of the evidence discussed above and a renewal of Marsh's contention the evidence did not show Marsh participated in any conduct resulting in the concealment of mileage in excess of 137 miles. These arguments have been previously considered. The amount of punitive damages to be awarded for the purpose of punishment and to serve as an example and deterrent to others is within the sound discretion of the jury. *Bowers v. S–H–S Motor Sales Corporation,* 481 S.W.2d 584, 590[3–4] (Mo.App.1972). The amount set by the jury will not be interfered with unless there is a demonstrated abuse of discretion. "Ordinarily, abuse of discretion in this reference means so out of all proper proportion to the factors involved as to reveal improper motives or a clear absence of honest exercise of judgment." *Bowers* at p. 590.

It cannot be said the amount of punitive damages here demonstrates a failure on the part of the jury to exercise its honest judgment.

Marsh raises other points but they are all based on contentions which are discussed herein.

The judgment is affirmed.

All concur.