William H. KAMMERER et al.,
Plaintiffs-Respondents,

v.

Charles J. CELLA, Defendant-Appellant.

No. 39994.

Missouri Court of Appeals,
Eastern District,
Division One.

July 31, 1979.

Jesse E. Bishop, St. Louis, Justin J. Weil, Clayton, for defendant-appellant.

David Wells, Peter A. Fanchi, Thompson & Mitchell, St. Louis, for plaintiffs-respondents.

SNYDER, Presiding Judge.

Plaintiffs brought suit in ejectment and for damages under Count I and for additional damages under Count II of their petition. Defendant filed a counterclaim for an easement by prescription. Plaintiffs' Count II was dismissed during the trial. After jury verdicts for defendant on both the petition and his counterclaim, the trial court granted plaintiffs' motion for a new trial. This appeal followed.[1]

The judgment is affirmed.

Defendant contends the trial court erred in granting a new trial. The trial court's stated grounds for the new trial were: (1) the jury verdicts were against the weight of the evidence; and (2) defendant's verdict directing Instruction No. 6 was erroneous.

The parties own adjoining parcels of real estate fronting on the south side of Clayton Road in St. Louis County. The eastern parcel is the location of Busch's Grove, a restaurant which has been in existence since before 1890. Plaintiffs have owned and operated the restaurant since before 1951. The western parcel is the location of the Clay Price Shopping Center which was built in the 1950's and is now owned by defendant. The parcels have a common boundary, the eastern line of the shopping center property being the same as the western line of the restaurant property.

A driveway that is, in part, the subject of this action was installed along the common boundary by defendant's predecessor in title. The driveway is used by tenants of defendant and their customers as well as the general public. Evidence that this driveway extends between eight and ten-and-a-half feet onto plaintiffs' property at its point of greatest encroachment was not contested.

The shopping center was constructed on defendant's parcel in 1952 by his predecessor Beck. In 1959, Beck conveyed to the Pass brothers who in turn conveyed to defendant in 1962.

The driveway in question was first constructed in 1952 or 1953 at the request of Mr. and Mrs. Macner, then tenants of Beck in the shopping center. Both plaintiff William Kammerer and Beck testified that Kammerer, on behalf of all plaintiffs, gave Beck and the Macners permission to install a gravel roadway located partially on plaintiffs' land. Both Kammerer and one of the Pass brothers testified that, in 1959 or 1960,

---

1. In this opinion the parties will be referred to by their trial court designations.

Kammerer, again at the Macners' request, gave Pass permission to pave the driveway so long as Pass agreed to maintain it.

Mr. Macner was deceased at the time of the trial, but Mrs. Macner, an elderly woman who spoke with some difficulty, testified that she could not remember any conversations with Mr. Kammerer in which he extended permission to use plaintiffs' property for the driveway. To counter her testimony, plaintiffs introduced a 1975 typewritten statement signed by Mrs. Macner in which she acknowledged that such permission was obtained when the driveway was first used, and again when it was first paved.

After purchasing the property, defendant continued to maintain the driveway as had his predecessors. Portions of the driveway were occasionally torn up for the installation of drain or sewer pipes and repaved without any objection by plaintiffs. There was evidence that defendant had spent substantial sums of money maintaining the shopping center parking lots and driveways, a small percentage of which was spent on the disputed driveway. In 1975 Kammerer prevented Laclede Gas from installing a gas line on plaintiffs' side of the driveway to service defendant's property. Kammerer then employed a surveyor to establish the boundary, told defendant the driveway was on restaurant property and suggested they work out some sort of lease agreement.

Defendant subsequently informed Kammerer that he had always believed the driveway in question was located entirely on his parcel. Plaintiffs then filed this suit seeking to recover possession of the disputed land as well as damages for the unlawful withholding and for rents and profits. Defendant counterclaimed to establish an easement by prescription over that portion of plaintiffs' property in use as the driveway.

At the close of defendant's evidence, plaintiffs' motion for directed verdict on the counterclaim was denied. The jury, after deliberating for three hours and ten minutes returned a verdict finding the issues in favor of defendant on his counterclaim, but at the same time finding the issues in favor of plaintiffs on the petition and that plaintiffs were entitled to possession of the premises in controversy.

The court informed the jury that the verdicts were inconsistent in the eyes of the law and ordered them to deliberate further. Ultimately, the jury returned verdicts for defendant on both the petition and the counterclaim.

Plaintiffs moved for a new trial or, in the alternative, for judgment in accordance with their motion for directed verdict on the counterclaim.

The trial court granted plaintiffs' motion and ordered a new trial on all issues. Because the meaning of the language used by the trial court in its order is disputed by the parties, it is set out in full below:

> Plaintiff's [sic] Motion for New Trial on Plaintiff's [sic] cause of action and on Defendant's Counterclaim, heretofore submitted, said Motion is hereby sustained on the grounds that the verdicts were against the greater weight of the evidence in this case. All of the evidence sustained a finding that whatever use defendant had of this piece of property was permissive in nature. There was no evidence to the contrary. The testimony of one witness that she could not remember whether permission was granted or not is not probative evidence. Therefore, the verdicts are against the weight of the evidence and the Motion is hereby sustained. In addition the Court erred in giving and reading of Instruction No. 6 to the jury.

Defendant maintains the new trial order should be interpreted as grounded upon the failure of defendant to make a submissible case, a matter of law reviewable by an appellate court. Conversely, plaintiffs interpret the order as based upon the discretionary ground that the verdict was against the weight of the evidence.

■ An appellate court ordinarily will not review a discretionary order granting a new trial because the verdict was against the weight of the evidence. *Gray v. Kop-*

lar-Barron Realty Co., 497 S.W.2d 185, 187[1] (Mo.App.1973); Rule 78.02. The reason is that deference must always be given to the trial court's unique opportunity to view and judge the actual presentation of evidence and evaluate the many trial intangibles not discernible from a lifeless record. *Clark v. Quality Dairy Co.*, 400 S.W.2d 78 (Mo.1966).

Defendant contends that the trial court's order, because it states there was no evidence to refute plaintiffs' evidence of permissive use, constitutes a finding that defendant failed to make a submissible case on his counterclaim. Thus, argues defendant, the order is a purely legal conclusion reviewable by this court. *Lifritz v. Sears, Roebuck & Co.*, 472 S.W.2d 28, 33[8–11] (Mo.App.1971).

Defendant points to the language in the trial court's order to the effect that "[a]ll of the evidence sustained a finding that whatever use defendant had of this piece of property was permissive in nature. There was no evidence to the contrary." He interprets this as a finding that he made no submissible case on his counterclaim for a prescriptive easement in spite of the two explicit statements in the ruling that the motion was granted because the verdicts were against the weight of the evidence.

■ This court is not bound by the construction either party attributes to the trial court's language, but must make its own interpretation. *Schreiner v. City of St. Louis*, 203 S.W.2d 678, 683[10] (Mo.App. 1947).

In interpreting the order the twice expressed intention of the trial court to grant the new trial because the verdicts were against the weight of the evidence must be given due consideration.

The order is indeed ambiguous. If the trial court had stopped after saying the verdicts were against the greater weight of the evidence, the ruling unquestionably would have been discretionary and not subject to appellate review.

■ The language which defendant suggests is a holding that he failed to make a submissible case should not be so interpreted. It mentions only the evidence concerning permissive use. Adverse use is an element necessary to a prescriptive easement not mentioned in the order for a new trial.

■ It has been held that a use originally permissive cannot ripen into an easement, *Seested v. Applegate*, 26 S.W.2d 796, 799[6–10] (Mo.App.1930). However, a distinct and positive assertion of a right hostile to the owner and brought home to him can give rise to an adverse use, which may change the nature of a permissive use. *Miller v. Berry*, 270 S.W.2d 666, 667[3] (Mo.App. 1954); *Meinhardt v. Luaders*, 575 S.W.2d 213, 215[2] (Mo.App.1978).

The order itself said nothing about adverse use and can only be interpreted as finding the jury rendered verdicts against the weight of the evidence because of: (1) the evidence of permission; and, (2) the character of the evidence of notice to plaintiffs of defendant's assertion of a hostile right. Therefore, the trial court was exercising its discretion in granting the motion for a new trial, and its judgment should be affirmed.

The case defendant relies on, *Lifritz v. Sears, Roebuck and Company, supra*, is distinguishable. Although the *Lifritz* court also specifically stated the new trial was granted because the verdict was against the weight of the evidence, it followed the oft criticized practice of sustaining the new trial motion on three grounds set forth in the motion. The three grounds, when combined, could only be interpreted as stating the plaintiffs failed to make a submissible case.

Defendant also charges that the trial court erred in granting plaintiffs' motion for a new trial on the ground that Instruction No. 6 was erroneous.

Defendant initially contends that the trial court's ruling is presumptively erroneous because it failed to specify the error in the instruction. Defendant also asserts that plaintiffs failed to preserve for appellate review their allegations of error as to Instruction No. 6 because the objections raised in their appeal brief were different

from those raised in their motion for a new trial.

It will not be necessary to decide these two preliminary points because the cause is being remanded for a new trial on the ground that the verdicts were against the weight of the evidence. However, to furnish some guidance in the avoidance of future trial error, the alleged error in the instruction will be considered.

Defendant's verdict directing Instruction No. 6 reads as follows:

The court instructs the jury that if they believe from the evidence that Charles J. Cella, and Middleton Realty & Theatrical Co., and their tenants were in actual, open, visible, notorious and continuous adverse use of the land in controversy for at least ten years before July 25, 1975, then they will return a verdict for Defendant on Defendant's Counterclaim.

Instruction No. 9 which was given on behalf of plaintiffs reads as follows:

Your verdict must be for plaintiffs on defendant's counterclaim under Instruction No. 6 if you believe:

First: That the use of the driveway on land claimed by defendant was originally by permission of plaintiffs, and

Second: That plaintiffs were never advised prior to July 25, 1965, that such use was under a claim of right other than that granted by plaintiffs [sic] permission.

■ Plaintiffs contend, and this court agrees, that Instruction No. 6 should have referred to or negated the permissive use affirmative defense hypothesized in plaintiffs' Instruction No. 9.

■ In negligence cases, when a contributory negligence instruction is given on behalf of a defendant, it is error to give a plaintiff's verdict director which does not refer to nor negate defendant's contributory negligence. *Moore v. Ready Mixed Concrete Company*, 329 S.W.2d 14, 23–24[6, 7] (Mo. banc 1959); *Fowler v. Laclede Gas Company*, 488 S.W.2d 934, 936–937[6, 7] (Mo.App.1972).

Defendant cites *Jefferson v. Biggar*, 416 S.W.2d 933, 939 (Mo.1967) and *Boll v.*

*Spring Lake Park, Inc.*, 358 S.W.2d 859, 866 (Mo.1962) as holding that there is no duty to submit contributory negligence in a verdict directing instruction. They do not so hold. The point was not raised in *Biggar*. The *Biggar* decision states that the verdict directing instruction did indeed refer to the contributory negligence instruction. In *Boll* the court states at page 866[15] that plaintiff had the duty either to refer to or negate plaintiff's contributory negligence in his verdict directing instruction and that he did so adequately.

No cases are cited in the briefs and none has been found by the court which discusses the necessity of referring to or negating affirmative defenses in plaintiffs' verdict directing instructions in prescriptive easement cases. It is stated generally in MAI, How to Use This Book, page LII, that when an affirmative defense is in issue the verdict directing instruction should be modified to negate it. In *Crow Contracting Corp. v. Geo. F. Smith Co.*, 407 S.W.2d 593, 598[5–7] (Mo.App.1966), a bailment was involved in which the affirmative defense alleged that a trenching machine was not in the possession of defendant at the time it was damaged. The plaintiff's verdict directing instruction was held erroneous because it failed to negate the affirmative defense instruction which was supported by the evidence. The resolution this court now offers incorporates the identical reasoning as that embodied in the contributory negligence submissions and in *Crow Contracting Corp.*

The jury here may have considered Instruction No. 6 and found from the evidence that the hypothesized facts were true. At the same time they may have found that facts hypothesized in Instruction No. 9 were true and experienced difficulty in resolving the obvious inconsistency. The defect in the given instructions probably accounts for the action of the jury in first returning verdicts which found for *both* parties and which the trial court refused to accept as inconsistent.

■ If the jury had considered Instruction No. 6 only, ignoring No. 9, they could have found as true all the facts set forth in No. 6, and yet a verdict for defendant on

his counterclaim would have been erroneous. This because there would have been a failure to find a distinct and positive assertion of a hostile right brought home to the owner. Such notice to the owner is necessary to finding a use adverse when the use was initially permissive. *Pitzman v. Boyce*, 111 Mo. 387, 19 S.W. 1104, 1105 (1892); *Meinhardt v. Luaders, supra*, 214[2]; *Bridle Trail Association v. O'Shanick*, 290 S.W.2d 401, 405[2–6] (Mo.App.1956); *Miller v. Berry, supra*, 670[6].

Defendant relies on *Huter v. Birk*, 510 S.W.2d 177 (Mo.1974) in which he says an instruction similar to No. 6 was approved. His reliance is misplaced. In *Huter* there was no evidence of permissive use nor was an affirmative defense instruction given, material distinctions between the cases. Plaintiffs here adduced direct evidence that the use by defendant was permissive, and such evidence requires a different view of the instruction problem.

It was error to submit Instruction No. 6 without referring to or negating plaintiffs' affirmative defense.

The judgment of the trial court granting a new trial on all the issues is affirmed.

DOWD and STEPHAN, JJ., concur.